WESTERN DIST.
*October*, 1836.

RHODES & PETERS *vs.* BEAMAN & WATERS.

APPEAL FROM THE COURT OF THE SIXTH JUDICIAL DISTRICT, THE JUDGE OF THE FIFTH PRESIDING.

The article 1979 of the Louisiana Code, declaring contracts fraudulent as to creditors, which are made with the knowledge of the obligee, that the obligor was in failing and insolvent circumstances, and when they give the former an advantage over other creditors, merely establishes a *presumption* against such contract. But it does not exclude other evidence of fraud, or control the principle that every contract may be the object of the revocatory action which is made in fraud, of the rights of creditors.

Where a party is interrogated on oath, to state what he gave for the purchase of a certain stock of goods; how much he paid in cash, and to whom; and to state all about it, he cannot avail himself of the plea of newly discovered evidence, with a view to prove payment on a second trial; as he might have proved it in his answers to the interrogatories.

A defendant cannot obtain a new trial, on the ground that he could prove a particular transaction, or contract, by witnesses, which would make it appear different from the written contract itself.

A new trial will not be granted on the ground of newly discovered evidence, when all the facts which are expected to be proved on the second trial, must have been within the knowledge of the parties on the first.

This is an action to rescind the sale and recover the value of certain property, as having been made in fraud of creditors.

The plaintiffs allege they are creditors of the firm of E. M. Lowe & Co., in the sum of two thousand two hundred and fifteen dollars, with interest, and that said firm have failed to pay said debt, and being in insolvent circumstances in 1831, one of the partners in the name of the firm, sold and delivered to C. Beaman, all their stock of goods, without appraisement or inventory, for the price of three thousand dollars, when they were worth six or seven thousand dollars, which

WESTERN DIST. sale they allege was fraudulent and void, and ought to be
October, 1836. rescinded.

RHODES ET AL.
vs.
BEAMAN ET AL.

. They further allege, that this sale was made to benefit one set of creditors, to the injury of others, and amongst the former who were paid by said sale, was one W. Waters; that the sale was made under color to said Beaman, for the benefit of Waters, who was a creditor of the firm to a considerable amount; that the sale purported to be made for cash, when in truth, the consideration was debts due by the firm of Lowe & Co; that so far as Beaman was interested, although the sale was made to him in the first instance, he had become a creditor of the firm. They further allege that Waters has since sold said stock of goods, and by reason of the premises, both him and Beaman have become liable for their value. They pray that said sale be cancelled, and that they have judgment *in solido* against them for the amount of their claim.

Interrogatories were propounded to the defendants, on oath, touching the purchase of said goods.

Other creditors were allowed to intervene, and join the plaintiffs against the defendants.

The defendants pleaded the general issue.

Beaman, one of the defendants, being interrogated: *First*, If he had made the purchase of goods from Lowe & Co.? says he did for the sum of three thousand dollars.

*Second*, If he was a creditor of Lowe & Co. at the time of the sale; to what amount and in what manner? Says he was never a creditor.

*Third*, If not a creditor, did you or not make the purchase as agent of Wm. Waters and other creditors, believing at the time that Lowe & Co. were insolvent; and that Waters and others were to be paid from said sale? Answers he did not make the purchase as agent for Waters, or any other person; that he knew nothing of the circumstances of Lowe & Co., and had no right to believe them insolvent; that at the time, they owed Dr. Hale five hundred dollars, which he became responsible for, on their account.

*Fourth,* If he had any personal interest in said purchase ? WESTERN DIST. How much money did you pay ? to whom and by whom was <u>October, 1836.</u> it advanced ? says he had a personal interest in the purchase ; RHODES ET AL. at first he had no expectation of purchasing, and would not $\frac{vs.}{\text{BEAMAN ET AL.}}$ have done so if Waters had not agreed to advance the funds ; still owes Waters, and has bound himself to pay Dr. Hale.

*Fifth,* Asked if he knew the creditors who were to be paid from said sale, and the amount of their claims ? Answers, that he understood Lowe & Co. owed Waters something, which would be retained out of the sale ; has no direct knowledge of it ; agreed to pay Hale as above stated ; knows nothing of other creditors at the time.

*Sixth,* Asked if he did not leave Waters in possession of the goods ; and if the latter did not become the owner of them, and in what manner ? Answers, No ; that he employed a man who took possession for him, and several days after he told Waters that he was apprehensive he could not raise so much, and that he (Waters,) might have half of the goods, which he agreed to.

*Seventh,* Asked if he and Waters did not intend to evade the law, by having the sale made to him, instead of Waters ; thereby securing the claim of the latter indirectly ? Says, No.

*Eighth,* Was not the sale made for much less than the value of the goods, and to secure some advantage, and whom was it to secure ? Says he considered the purchase a good one at the time, and that the goods were worth more than he gave, or he would not have purchased. The purchase was not made to secure the advantage of any one, but exclusively on speculation.

*Ninth,* Asked what interest he had ; what had Waters, or both of you, either jointly or severally in said. purchase ; how and in what manner were the goods to be paid for ; what claims against the firm of Lowe & Co. were paid as a consideration for said purchase by you, or either of you, jointly or severally, and in what manner ? Answers that this interrogatory had been answered fully already in his former answers.

WESTERN DIST.          The other testimony showed that Lowe & Co. were in
October, 1836.   insolvent circumstances at the time of the sale to Beaman,
RHODES ET AL.   and that they failed soon after; that Waters was a credi-
vs.
BEAMAN ET AL.   tor, and got his debt paid by the sale of the goods, and said
he gave three thousand dollars for them.   It further appeared
that Beaman paid no money, although the act of sale to him
was made on its face for cash.   There was other testimony
to this point.   The goods were inventoried at five thousand
one hundred dollars, and sold by Beaman and Waters soon
after this purchase, for four thousand nine hundred dollars.

The jury returned a verdict that the sale be rescinded;
and that the plaintiffs and intervenors recover from Wm.
Waters and Carter Beaman, the sum of four thousand nine
hundred and thirty-two dollars, to be divided amongst all the
creditors of Lowe & Co.

The defendants moved for a new trial, on the ground of
newly discovered evidence since the trial.

The nature of this evidence as set forth in the affidavits,
is fully stated in the opinion of the court.

From judgment rendered confirming the verdict, the
defendants appealed.

*Dunbar* and *Barbour,* for the plaintiffs.

1. This is an action to set aside a sale made by Lowe &
Co. to the defendants, in fraud of the plaintiffs as creditors of
the firm of Lowe & Co.   The law gives to creditors an
action to annul any contract made in fraud of their rights.
*Louisiana Code,* 1965, *et seq.* and 1979.

2. The evidence in this case shows conclusively that there
was fraud and collusion, on the part of Beaman & Waters,
to obtain an advantage in favor of Waters, as a creditor of
Lowe & Co., and secure his debt in preference to the other
creditors.   The jury has found this fraud, and by their
verdict annulled the sale, in favor of the plaintiffs.   This
verdict and the judgment thereon, must stand.   It is based
on law and conclusive evidence.   8 *Louisiana Reports,* 168.
10 *Martin,* 605.

3. It was incumbent on the party averring, that the sale was *bonâ fide*, and for a *price* certain, to show it. They should have shown what was the consideration, and the price or money actually paid; to whom and by whom paid. This they have not done, although every opportunity was afforded them. Beaman in his answers to interrogatories, might have stated it fully, as he was expressly interrogated to this point.

*Judge Boyce*, for the defendants, contended that the sale to Beaman was a fair and *bonâ fide* one. He was no creditor of Lowe & Co. The act of sale expresses on its face a *price*, as the consideration which is good and lawful, and that the sum of three thousand dollars for which it was made, was paid in cash. The answers of Beaman supports this sale, and negatives all fraud and collusion.

2. Beaman was in no way connected with Waters in this purchase. He did not buy the goods as agent of Waters; nor was he endeavoring to procure indirectly for Waters, what he could not get directly. He was himself no creditor of the seller. His answers fully show this; and no direct evidence or circumstances from which presumptions of any weight can be drawn, has been produced to contradict these answers.

3. If Beaman then is to be believed, he bought the goods for himself; was not a creditor and did not know of the seller's insolvency. His contract was fair, and should be protected in law. *Louisiana Code*, 1981.

4. It is not necessary that a sale under article 1981, should be for cash. It may be made for a draft, or any other mode of payment in the course of business. And no expectation which Waters, or any other creditor might have of being paid out of the price, or any conduct of theirs could invalidate the contract. See case of *M'Manus's Syndic* vs. *Jewett*. 9 *Louisiana Reports*, 170.

5. Even under these circumstances, if the value of the property exceeded by one fifth the price given for it, the

creditors might annul it; but in doing so they would be bound to restore the price. *Louisiana Code,* 1976.

*Winn,* also, for defendants, suggested that the charge of the judge *a quo,* was erroneous, in laying down the rule; that "if the circumstances in which Beaman stood at the time of the sale, were such as to induce a prudent man to make further inquiry, as to the insolvency of Lowe & Co., *the jury might presume,* and find that he had notice," &c. This charge clearly directs the jury to regard as disproved, the positive answer of Beaman to interrogatories, that he had no knowledge of their insolvency at the time of the sale.

2. This charge further directs the jury to disregard the positive declaration of Beaman, made on oath, upon evidence of the slightest character; mere presumptions which should not weigh a feather in the scale, and upon such evidence as is unknown to the law. *Louisiana Code,* 1976.

3. The verdict of the jury is clearly contrary to the evidence, as shown by Beaman's answers, which form a controlling feature in this case. The sale must be shown to have been made to a creditor, and with the view to give him an unjust preference, before it can be annulled as fraudulent with respect to other creditors. 6 *Louisiana Reports,* 538.

4. The burthen of proof of fraud, or knowledge of the insolvency of the vendor in the vendee, at the time of sale, devolves on the plaintiffs, which they are bound to show by positive evidence. This is not done here. 4 *Louisiana Reports,* 253.

*Bullard, J.,* delivered the opinion of the court.

This is an action to annul a sale made by the debtors of the plaintiffs, and intervenors, to the defendants, or one of them acting for both, of a stock of goods, which contract is alleged to be in fraud of their rights. The case was submitted to a jury, whose verdict was in favor of the plaintiffs, and being followed by a judgment annulling the contract, and condemning the defendants to pay the value of the goods, the latter appealed.

Questions, such as this case presents, are so peculiarly of the province of juries, that this court will not disturb a verdict, unless manifestly without or against evidence, when the trial has been fairly conducted, and the jury does not appear to have been misguided by an erroneous exposition of the law.

Much reliance has been placed by the counsel for the appellants, on article 1979, of the Code, which declares that every contract shall be *deemed* to have been made in fraud of creditors, when the obligee knew that the obligor was in insolvent circumstances, and when such contract gives to the obligee, if he be a creditor, any advantage over other creditors. It is contended that the defendant, Beaman, was not a creditor, and that he is not shown to have had a knowledge of the failing circumstances of the vendors. We consider this article as merely establishing a presumption against the contract, whenever it is first shown, that the obligee knew of the discomfiture of the obligor, and when being a creditor he gains an advantage over other creditors. But it does not exclude other evidence of fraud and collusion, and does not control the broad principle established by the Code, that every contract may be an object of the revocatory action, which was made in fraud of the rights of creditors.

*The article 1979 of the Louisiana Code, declaring contracts fraudulent as to creditors, which are made with the knowledge of the obligee, that the obligor was in failing and insolvent circumstances, and when they give the former an advantage over other creditors, merely establishes a presumption against such contract; but it does not exclude other evidence of fraud, or control the principle that every contract may be the object of the revocatory action, which is made in fraud of the rights of creditors.*

The evidence in the record is sufficient, in our opinion, to justify the jury in finding that the two defendants were concerned in the transaction, from the beginning, and that no such contract was in reality ever entered into, as would appear to have been evidenced by the written bill of sale, set up in the defence, and that the sum of three thousand dollars therein recited, was in fact never paid. It is not necessary to inquire on which party the law imposed the burthen of proof. The evidence in the record is quite satisfactory, that the bill of sale was simulated, and that the contract, whatever it may have been, was not such as by the written evidence adduced, it purported to be.

The charge of the court, to the jury on the trial, was excepted to, and our attention has been called to the bill of

47

exceptions. We have attentively examined the charge, and consider it fair, and even favorable to the defendants. The judge says, "as to knowledge of Beaman of the insolvency under the decisions of the Supreme Court, I feel bound to say, that it was and is necessary to charge him. Is that fact proved? You will decide on all the evidence. On this I would lay down this rule; if the circumstances in which Beaman stood at the time of the sale, were such as to induce a prudent man to make further inquiry as to the insolvency of Lowe & Co., you may presume and find he had notice." The whole of this clause taken together, presented the question fairly to the jury, although the latter part of it has the appearance of laying down the rule too broadly. But in what position does the evidence place the defendant? He appears to have been acting for or jointly with an avowed creditor of Lowe & Co., and seeking to avail himself of the advantages of a contract, different from the one alleged, and the effect of which, was to secure payment to at least two creditors of Lowe & Co., and manifestly to the prejudice of the plaintiffs. All these circumstances were left to the jury to decide upon the fairness of the transaction.

It is, lastly, urged by the defendants' counsel, that the court erred in refusing to grant a new trial, on the ground of newly discovered evidence. Both the defendants filed affidavits. That of the defendant, Beaman, sets forth, substantially, that he can prove by W. H. Kitchen, that Lowe & Co. offered to sell the stock of goods in question, to several persons, and especially to Kitchen, eight or ten days before the purchase, for three thousand five hundred dollars, which was refused by him after examining the goods. That he can prove by Z. Dowty, the payment of the money to Lowe & Co. He further states, that when he answered the interrogatories, he had not paid Dr. Hale, but that he has since paid him, in compliance with his obligation; and that the payment was made before the trial of the case. That he had paid W. Waters, his co-defendant, before the institution of this suit, one thousand dollars, in part payment of the cash advanced by him, to enable the affiant to make the purchase.

With respect to the testimony of Mr. Kitchen, we think it would avail the defendant nothing, even if admitted, and as to the payment, he had an opportunity of proving that, by answering the interrogatories propounded to him, touching the payment of the price set forth in the bill of sale. That part of the fourth interrogatory, in which he is called on to say, "how much money he had paid in cash, and to whom it was paid," is not answered at all. The affidavit of Dowty, by whom the defendant expects to prove the payment of the money to Lowe & Co., is also in the record, and he is silent as to any payment of money by Beaman, to his vendors.

The defendant, Waters, makes oath that W. H. Kitchen, the same witness mentioned above, is material and important, on the same ground as stated in the affidavit of his co-defendant. He states that he was unavoidably absent at the time of the trial, and he gives an account of the transaction, from which it would appear that he suggested to Beaman the idea of making the purchase, and that he afterwards became interested, and secured a debt due to him by Lowe & Co. He does not state by what witnesses he could prove these facts on a new trial, and if he had, such evidence would be wholly inconsistent with the terms of the bill of sale.

All the facts which the parties allege, they expect to prove on the new trial, except what relates to the offer of Lowe & Co., to sell to Kitchen and others, which we consider immaterial, must have been within their personal knowledge before the first trial; and this court held, in the case of Smith vs. Crawford, that in such case, an application for a new trial ought not to be granted. 10 Martin, 81.

It is assigned as error apparent, on the record, that the judgment does not conform to the verdict. The verdict is in favor of the plaintiffs and intervenors, and that they recover the sum of four thousand nine hundred and thirty-two dollars and thirty-six cents, to be divided among all the creditors of Lowe & Co. The judgment is, that the verdict of the jury, and the law-and evidence being in favor of the plaintiffs and intervenors, it is ordered, adjudged and decreed, that the plaintiffs recover said amount. It appears to us that there is

WESTERN DIST.

October, 1836.

RHODES ET AL.
vs
BEAMAN ET AL.

Where a party is interrogated on oath, to state what he gave for the purchase of a certain stock of goods; how much he paid in cash, and to whom, and to state all about it, he cannot avail himself of the plea of newly discovered evidence, with a view to prove payment on a second trial, as he might have proved it in his answers to the interrogatories.

A defendant cannot obtain a new trial, on the ground that he could prove a particular transaction or contract by witnesses, which would make it appear different from the written contract itself.

A new trial will not be granted on the ground of newly discovered evidence, when all the facts which are expected to be proved on the second trial must have been within the knowledge of the parties at the first.

WESTERN DIST. no substantial discrepancy. The intervenors became parties
October, 1836. plaintiff, and joined the original plaintiffs in the pursuit of
CHEW ET AL. their rights.
vs.
FLINT, CURATOR.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed with costs.